Albert M. **BILLITERI**, Plaintiff,

v.

**UNITED STATES BOARD OF PAROLE et al., Defendants.**

**Nos. Civ.-74-365, Civ.-74-580.**

United States District Court,
W. D. New York.

April 4, 1975.

Philip B. Abramowitz, Buffalo, N. Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Dennis P. O'Keefe, Dept. of Justice Atty., of counsel), for the Government.

CURTIN, Chief Judge.

Both of these actions, consolidated by an order dated December 24, 1974, concern the same subject matter—the parole of Albert M. Billiteri. Billiteri was sentenced to a term of five years in 1972 by the late Chief Judge John O. Henderson after entering a guilty plea to a violation of the general conspiracy statute. 18 U.S.C. § 371. After completion of one-third of his term, Billiteri became eligible for parole and was afforded an initial parole hearing in February of 1974. Parole was denied and after administrative remedies were exhausted, Civ-74-365 was commenced.

In that case, it was clear that the parole release determination made by the United States Board of Parole (hereinafter Board) was based on erroneous information regarding Billiteri's conviction. Because the error went to the heart of the Board's stated reasons for denying parole, the proceeding was deemed arbitrary and capricious. In a decision and order dated November 26, 1974, I directed that Billiteri be afforded a reconsideration by the Board within thirty days or be released on parole. Billiteri v. United States Board of Parole, 385 F.Supp. 1217 (WDNY, 1974).

On December 11, 1974, Billiteri appeared with counsel before an examiner panel of the Board at Lewisburg Federal Correctional Institution. At that hearing numerous topics relevant to the subject of parole were discussed. Although the transcript of the examiner panel hearing is very poor in quality, an apparent effort to address the subjects alluded to in the order of November 26, 1974, is manifest.

The examiner panel, however, did not apprise Billiteri of its conclusions because an *original jurisdiction/organized crime* (hereinafter oj/oc) designation had had a part in the prior parole release determination. As a result, Billiteri was informed that the matter would have to be referred to the Regional Board of Parole as an original jurisdiction case (see Exhibit A annexed to the Government's answer of January 16, 1975). The panel did tell Billiteri and his lawyer that they would forward a tentative decision to the Regional Board which would become effective should the Regional Board decide to discontinue Billiteri's case as one of original jurisdiction.[1]

As Christmas Day approached no further word was communicated to Billiteri or his lawyer regarding the actions of the Board. The court's order of November 26, 1974, however, mandated the release of Billiteri on parole if the Board failed to *reconsider* his application within thirty days. (Emphasis added.) Counsel for Billiteri, having concluded that the Board's failure to reach and communicate a decision within the thirty days violated the court's decree, filed an order to show cause in Civ-74-365 praying for Billiteri's release. At the same time a new proceeding was commenced, Civ-74-580, challenging the oj/oc designation. The actions were consolidated and the return was scheduled for January 6, 1975.

On the date of the return the United States Attorney, representing the Board, requested an adjournment of ten days. The Government contended that the intervening Christmas and New Year's Day holidays had hindered the collection of information necessary to form a rational response. Furthermore, the Government informed the court that the Regional Board of Parole was scheduled to meet in Kansas City, Missouri, on January 13, 1975, to consider Billiteri's case.

1. The procedures followed by the examiner panel and the original jurisdiction designation are drawn from the rules and regulations of the United States Board of Parole. 28 CFR Sec. 2.17 (rev'd 6/74). On December 18, 1974, Billiteri's reconsideration was in fact continued as an original jurisdiction case. (See Exhibit C annexed to the Government's answer of Jan. 16, 1975.)

Therefore, in an order dated January 6th, a ten-day extension was granted, with instructions to the Government to begin compiling the information necessary to make a substantial return on January 16, 1975.

In light of the information regarding the prospective hearing, counsel for Billiteri requested leave to appear before the Regional Board of Parole at their meeting scheduled for January 13, 1975. In a letter dated January 8, 1975, leave to appear was denied by the Board. Billiteri was also not scheduled to be present.

On January 13th the Regional Board met as scheduled and denied Billiteri's application for release. The affidavit of Curtis Crawford, the Regional Director of the Northeast Region of the United States Board of Parole, together with the transmittal notice of decision dated January 15, 1975 (both making up Exhibit B of the Government's answer of January 16, 1975) outlined the basis of the decision to continue Billiteri to the expiration of his five year term.

At the Regional Board's meeting it was decided that Billiteri's application "would first be considered without reference to the allegations of organized crime association in records. It was further agreed that if the decision was to continue the case to expiration without consideration of the organized crime allegations, the Board members would not reach the issue of organized crime involvement . . . ." (Exhibit B, at page 2.) The Board assigned Billiteri a salient factor score. Salient factors include educational history, family history, criminal history, release plans, etc. Billiteri's score of 8 was on the high end of "good." Billiteri's offense behavior was classified as very high severity. Although the crime of conspiracy is itself not listed among the catego-

ries of offense behavior, the Board reasoned that "because the offense behavior as described in the presentence report most nearly resembled the offense of extortion, which is in the very high severity category . . . ." that is where Billiteri belonged.[2] The Board's guidelines indicated a range of 36 to 45 months to be served for a person with a salient factor score of eight and an offense behavior in the very high severity category. With thirty months of incarceration behind him, Billiteri was below even the minimal guideline release date. Therefore, the Board's final decision was to continue Billiteri to the expiration of his term.

The question which this court must resolve is whether this reconsideration by the Regional Board satisfied the mandates of the order of November 26, 1974.

 Clearly, the court's order of November 26, 1974, emphasized the need for reasoned approaches in parole release determinations. This court refused at that time to substitute its own judgment for that of the Board. It was desirable to allow further administrative consideration in light of a previous error. What emerges from the reconsideration, however, is in many respects worse than that which came before.

The precise manner in which the Board could reconsider the application was left to them. Commendably, they began at the beginning with an examiner panel hearing on December 11, 1974. But the transcript of that hearing is almost valueless (Exhibit A annexed to the Government's answer of January 16, 1975). The only bits of information discernable are scattered references to the subjects discussed at that hearing.

The examiner panel recommended a decision, but the basis of their determination is unknown because their report and decision was not submitted to the

2. Exhibit B, at page 2. The question of where the offense of conspiracy fit into the offense behavior classifications was critical in the reconsideration by the Board ordered

on November 26, 1974. See also the notes and charts under 28 CFR Sec. 2.20 (rev'd 6/74).

court. The panel's decision, however, was obviated when Billiteri's case remained one of oj/oc pursuant to the directive of the Regional Director dated December 18, 1974 (Exhibit C annexed to the Government's answer of January 16, 1975). In addition, there is no indication that the Regional Board placed any reliance on the examiner panel's decision or, for that matter, on any of the spotty data developed at the December 11, 1974, hearing.

The Regional Board was, in effect, starting from ground zero on January 13, 1975. They disclaimed any need to consider the oj/oc designation because they were able to reach an adverse determination without it. But the disclaimer has a hollow ring.

The oj/oc designation was clearly on the minds of the examiner panel at the December 11, 1974, hearing. They confronted Billiteri and his attorney with the organized crime allegations contained in the presentence report prepared in 1972. Apparently neither Billiteri nor his attorney had seen the report and were surprised by its introduction at the hearing.[3] Some discussion of the organized crime allegations took place but because of the nature of the transcript and the events which followed, it is difficult to discern what value this discussion had.

From the affidavit of Regional Director Crawford it seems that "a prisoner such as Albert Billiteri is appropriately designated for an original jurisdiction consideration by virtue of the mere allegation of organized crime involvement even though that allegation may never be proved or relied upon by the Board in its decision making." (See Exhibit B, at page 4.) It follows that the examiner panel's discussion of this subject with Billiteri and his lawyer was an exercise in futility. If the standard as enunciated by Regional Director Crawford is the one to be applied, a panel decision could almost never be implemented in an oj/oc case, and here the panel decision was in fact discarded.

An additional disturbing aspect of the Regional Board's determination of January 13, 1975, was the ground for assigning Billiteri's offense behavior to the very high severity category. The stated reason for the categorization was the description of Billiteri's offense behavior in the 1972 presentence report. At the December 11, 1974, examiner panel hearing, this subject was discussed, although the transcript of the discussion is fragmented. There is evidence, however, that Billiteri's lawyer was successful in delimiting to some extent the nature of the offense committed.

At the Board's meeting on January 13, 1975, however, Billiteri did not have representation, permission having been denied on January 8th. In addition, Billiteri did not have the benefit of commenting on the unseen presentencing report or the examiner panel's report concerning his placement in the offense behavior guidelines. In other words, Billiteri had no input whatsoever in the determination of this important, outcome determining question. The Regional Board, however, at an admittedly original consideration chose to resolve this question on the basis of the oblique statements contained in a presentence report prepared in 1972.

The court itself has reviewed the presentence report prepared for Judge Henderson in 1972 and concludes that the allegations regarding the offense behavior and the allegations concerning organized crime involvement are based substantially on hearsay and not irrefutable. The opportunity thus far afforded to Billiteri to contest the allegations, however, was

---

3. See Exhibit A, at page 4. Billiteri was not represented by the same attorneys in his criminal case in 1972, and it is not clear whether the report was made available to him at that time.

deficient. On December 11, 1974, he was surprised, and on January 13, 1975. when it counted, he was precluded.

 I find that these limitations on Billiteri's right to be heard were substantial, resulted in an adverse decision by the Board, and were directly attributable to the oj/oc designation. Clearly a loss of this magnitude requires some procedural protection, Catalano v. United States, 383 F.Supp. 346 (D.Conn. 1974), but no administrative procedures to review the oj/oc question are available. In addition, a considerable passage of time has occurred since these proceedings began. The Board has already had a second opportunity to propound reasons for denying parole, and Billiteri alleges hardships which he asks this court to consider in expediting his application. Under the circumstances, it seems inappropriate to remand to the Board for yet another reconsideration. See Martinez v. Richardson, 472 F.2d 1121 at 1125 (10th Cir. 1973).

It is therefore ordered that a hearing be scheduled in this matter to take place at 10:00 a. m. on April 22, 1975, in Part I of this court, for the purpose of taking testimony on the issues of the organized crime connections of the plaintiff Albert M. Billiteri and the appropriateness of the placement of his offense behavior in the very high severity category. 28 CFR Sec. 2.20 (rev'd 6/74). The Government is directed to arrange for the plaintiff's presence at the hearing and to provide a copy of the plaintiff's presentencing report prepared in 1972 to the attorney for the plaintiff on or before April 12, 1975.

Finally, in light of the paucity of the record below, I direct that the Board present its case first with regard to supporting the allegations of Billiteri's organized crime designation and the placement of his offense behavior in the "very high severity" category. 28 CFR Sec. 2.20 (rev'd 6/74).

So ordered.