541 F.2d 938
 Albert M. BILLITERI, Appellee,
v.
UNITED STATES BOARD OF PAROLE and Members of the United
States Board of Parole, Individually and in their
official capacity, and United States of
America, Appellants.
 No. 732, Docket 75-6120.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1976.
Decided Aug. 30, 1976.
 
 Patrick J. Glynn, Dept. of Justice, Washington, D. C. (Richard L. Thornburgh, Asst. Atty. Gen., Robert L. Keuch, S. Cass Weiland, and Edward H. Siddens, Dept. of Justice, Washington, D. C., on the brief), for appellants.
 Philip B. Abramowitz, Buffalo, N. Y. (Martoche, Collesano, Abramowitz & Geller and Robert C. Macek, Buffalo, N. Y., on the brief), for appellee.
 Before ANDERSON and MESKILL, Circuit Judges, and OWEN, District Judge.*
 ROBERT P. ANDERSON, Circuit Judge:
 
 
 1
 Following his plea of guilty to one count of conspiring, in violation of 18 U.S.C. § 371, to make extortionate extensions of credit (proscribed by 18 U.S.C. § 892) and to use extortionate means to collect extensions of credit (proscribed by 18 U.S.C. § 894) Albert M. Billiteri was sentenced on July 5, 1972 to five years imprisonment and fined $10,000, which was the maximum penalty authorized by 18 U.S.C. § 371. In conjunction with Billiteri's guilty plea the four substantive counts under 18 U.S.C. §§ 892 and 894, for which he had also been indicted, were dismissed on the Government's motion.
 
 
 2
 Billiteri, who was serving his sentence at the United States Penitentiary at Lewisburg, Pennsylvania, became eligible for parole on March 3, 1974, when he had completed one-third of his sentence. 18 U.S.C. § 4202.[1] Following an initial parole hearing in February, 1974, the United States Board of Parole[2] issued an order on March 11, 1974, denying Billiteri parole and providing that his confinement be "continue(d) to expiration." The reason given by the Board for its decision was:
 
 
 3
 "Your release at this time would depreciate the seriousness of the offense committed and is thus incompatible with the welfare of society."
 
 
 4
 After unsuccessfully pursuing administrative appeals, Billiteri commenced an action in the United States District Court for the Western District of New York on July 29, 1974, alleging that the Parole Board had failed to give an adequate reason for denying him parole and that, on this and other grounds, its decision constituted a denial of due process and other constitutional rights. Billiteri asked the court to order the Board to release him on parole or to afford him a new hearing in accordance with due process safeguards. The Board submitted to the district court the affidavit of a senior analyst on the Board's staff, which set forth the reasons for the denial of parole as the "very high severity" of Billiteri's offense behavior and the "salient factor score" given to him under applicable Parole Board guidelines[3] that indicated "a range of 36-45 months to be served before release . . . ." The affidavit erroneously stated, however, that Billiteri had been convicted of "Conspiracy and Extortionate Extension of Credit" (emphasis supplied); when in fact, as the result of a plea bargain, he plead guilty to and was convicted only of conspiracy to make extortionate extensions of credit.
 
 
 5
 In view of this basic error the district court concluded that the Board's action constituted an abuse of discretion, because it was arbitrary and capricious and therefore violated Billiteri's right to due process. The court ordered that Billiteri be discharged from federal custody unless the Board reconsidered his application for parole within thirty days, and also gave him an explanation of the "essential facts upon which the Board's inferences are based," as required by this court's decision in United States ex rel. Johnson v. Chairman, N.Y. State Bd. of Parole, 500 F.2d 925 (2 Cir.), vacated as moot sub nom., Regan v. Johnson, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); Billiteri v. United States Board of Parole, 385 F.Supp. 1217, 1219-20 (W.D.N.Y.1974) (Billiteri I ).
 
 
 6
 In compliance with the district court's order of November 26, 1974, a second hearing was held on December 11, 1974 by an examiner panel of the Parole Board, and both Billiteri and his counsel were present. During the hearing they were informed that, because of Billiteri's involvement with organized crime, his case together with the panel's tentative decision (which would take effect in the event the Regional Director of the Board's Northeast Region declined to accept Billiteri's case) would again be referred to the Regional Director for possible further proceedings on an "original jurisdiction" "organized crime" basis (that is, "an oj/oc referral"), pursuant to 28 C.F.R. § 2.17. Billiteri's panel, therefore, transmitted to the Northeast Regional Director a summary of the second hearing and its tentative decision, not disclosed to Billiteri, to continue his incarceration until his mandatory release date on November 6, 1975.[4] The Director did, however, decide to take the case. At their quarterly meeting at Kansas City on January 13, 1975, all five Regional Directors considered and denied Billiteri's application for parole. Neither Billiteri nor his attorney was present at this meeting. The Regional Directors gave the following explanation for their decision:
 
 
 7
 "Your offense behavior has been rated as very high severity. You have a salient factor score of 8. You have been in custody a total of 30 months. Guidelines established by the Board for Adult cases which consider the above factors indicate a range of 36-45 months to be served before release for cases with good institutional program performance and adjustment. After careful consideration of all relevant factors and information presented, it is found that a decision below the guidelines at this consideration is not warranted. Your offense behavior is rated very high because it involved extortion which is in the very high severity category of the Board's guidelines."
 
 
 8
 The Directors also said that although Billiteri's file contained information alleging his involvement with organized crime, this information had not been considered in determining whether to grant parole, because the other facts of his case independently warranted denial.[5]
 
 
 9
 Prior to the January 13 meeting of the Regional Directors, Billiteri obtained an order to show cause why he should not be discharged from federal custody on the ground that the Parole Board had failed to "reconsider" his application for parole within thirty days, as required by the district court's November 26, 1974, order. He also filed a new action alleging that the procedures used by the Parole Board in designating his case "original jurisdiction," without providing him an opportunity to contest that classification, violated due process and other constitutional protections. The district court consolidated the two actions and granted the Government a delay of ten days so that its response could be deferred until after the meeting of the Regional Directors.
 
 
 10
 On January 16, 1975 the Government filed its answer, together with additional materials including a somewhat fragmented transcript of the December 11, 1974 panel hearing and affidavits of the Northeast Regional Director and the Board's senior analyst. On April 4, 1975, the district court ruled that the action taken by the Regional Directors on January 13, 1975 did not satisfy the mandates of the court's order of November 26, 1974. Billiteri v. United States Bd. of Parole, 391 F.Supp. 260, 262 (W.D.N.Y.1975). This opinion by the district court is referred to as Billiteri II. In it the court was primarily reviewing the holding of the Regional Board, and found that the Board's reconsideration and determination were faulty because: (1) Billiteri's counsel was not allowed to appear at its deliberations; (2) neither Billiteri nor his counsel was allowed to see either the 1972 presentence report on Billiteri or the examiner panel's report "concerning his placement in the offense behavior guidelines"; (3) the Board's decision rested in part upon the presentence report's indication that Billiteri was connected with organized crime; and (4) the examiner panel had alleged such connection by its action in forwarding Billiteri's case to the Regional Director and it appeared from the affidavit of the Regional Director that "a prisoner such as Albert Billiteri is appropriately designated for an original jurisdiction consideration by virtue of the mere allegation of organized crime involvement even though that allegation may never be proved or relied upon by the Board in its decision making." It further found on the basis of the Regional Director's affidavit that the recommended decision of the examiner panel of the Parole Board, following its hearing on December 11, 1974, at which Billiteri and his counsel appeared, was completely disregarded by the Regional Board.
 
 
 11
 The district court concluded that, even though in Billiteri I it had set aside the ruling of the Parole Board because it had proceeded on the assumption that Billiteri had been convicted of conspiracy and extortion, the Board had, in effect, continued to treat Billiteri as if he had been convicted of both offenses when it concluded that his crime "most nearly resembled the offense of extortion,"[6] and gave him a very high severity rating on the basis of information contained in his 1972 presentence report concerning his participation and general behavior in connection with the conspiracy to which he pleaded guilty.
 
 
 12
 The district court noted that the Board had already had a second opportunity to show adequate reasons for denying parole and had failed to do so, and it, therefore, ordered that a supplemental hearing be held on April 22, 1975 "for the purpose of taking testimony on the issues of the organized crime connections of the plaintiff Albert M. Billiteri and the appropriateness of the placement of his offense behavior in the very high severity category." Billiteri II, supra, 391 F.Supp. at 264.
 
 
 13
 This hearing was held by the district court accordingly, and thereafter it made its own determinations on the issues mentioned, in an opinion referred to as Billiteri III.[7] It stated in part:
 
 
 14
 "In the final analysis, this court is in a somewhat incongruous position. There is ample support for the proposition that Billiteri was an organized crime figure. The Board, however, did not rely on this fact in reaching its ultimate determination because there was allegedly a sufficient underlying basis for denying parole, to wit, the offense severity. This court finds, however, that the submitted underlying basis is without rational foundation and cannot support the determination made. Furthermore, another remand to the Board, in light of its past performance, is undeserved, as well as unfair to the plaintiff." Billiteri v. United States Board of Parole, 400 F.Supp. 402, 409 (W.D.N.Y.1975).
 
 
 15
 On September 17, 1975 the court filed its order directing the Parole Board to release Billiteri on parole. From this order the United States Board of Parole took the present appeal based upon three cardinal points: (1) the lack of jurisdiction in the district court to hold a de novo parole hearing and, sua sponte, order the petitioner released on parole; (2) the error on the part of the district court in ruling that the Parole Board had no right to consider the circumstances of the prisoner's offense behavior as described in his presentence report; and (3) the error of the district court in ruling that the Parole Board had failed to produce sufficient evidence to justify a denial of parole.
 
 
 16
 With regard to the first of the foregoing three points, both parties agree that there is no precedent for the district court's action in holding its own parole hearing on which it predicated its order to the Parole Board to release Billiteri on parole. As a statutory court, the United States District Court had no power to conduct such a proceeding and issue such an order. Congress has vested in the sound discretion of the Parole Board the sole power to grant or deny parole. 18 U.S.C. § 4203. Buchanan v. Clark, 446 F.2d 1379, 1380 (5th Cir.), cert. denied, 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971); Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir.), cert denied, 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); Thompkins v. United States Bd. of Parole, 427 F.2d 222, 223 (5th Cir. 1970); United States v. Frederick, 405 F.2d 129 (3rd Cir. 1968).
 
 
 17
 "The courts are without power to grant a parole or to judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations." Brest v. Ciccone, 371 F.2d 981, 982-83 (8th Cir. 1967).
 
 
 18
 The district court, of course, has authority to review a decision by the Board, where the issue has been properly brought before the court in a habeas corpus proceeding, which shows an abuse of discretion on the part of the Board, resulting in an abridgement of the petitioner's constitutional rights. Clay v. Henderson, 524 F.2d 921, 924 (5 Cir. 1975). The only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody.
 
 
 19
 In the present case the action of the district court as stated in its opinion referred to as Billiteri III, was a nullity and its order must be vacated.
 
 
 20
 Concerning the second point, i. e. whether the Parole Board can consider the circumstances of the prisoner's offense behavior as described in his presentence report, this court has uniformly held that a sentencing judge has wide latitude in taking into consideration all matters bearing upon the personal history and behavior of the convicted accused, and this is by no means confined to the defendant's conduct in connection with the offense for which he was convicted. It has held that in connection with a narcotics conviction, an unadjudicated charge of perjury could be considered. United States v. Hendrix, 505 F.2d 1233 (2 Cir. 1974). Offenses charged in dismissed counts of an indictment (as in the present case) may likewise be weighed in fixing sentence. United States v. Needles, 472 F.2d 652 (2 Cir. 1973). Similarly, the sentencing judge may properly take into account evidence of crimes of which the accused was acquitted. United States v. Sweig, 454 F.2d 181 (2 Cir. 1972). In United States v. Doyle, 348 F.2d 715 (2 Cir. 1965), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965), the sentencing judge obviously had taken into consideration the overall circumstances of the offenses charged in a multi-count indictment although the accused had pleaded guilty to only one of those counts.
 
 
 21
 If, therefore, the sentencing judge is not limited to a consideration of only that criminal conduct of the defendant which related to the offense for which he was convicted, the Parole Board, which is concerned with all facets of a prisoner's character, make-up and behavior, is, a fortiori, certainly entitled to be fully advised of the contents of the presentence report and to use it in giving an offense severity rating and for such other purposes that it finds necessary and proper. Menechino v. Oswald,430 F.2d 403, 407-8 (2 Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); Scarpa v. United States Board of Parole, 477 F.2d 278, 281 (5 Cir. 1973). The district court in the present case has taken the position that the Regional Board was in error in considering the presentence report and the examiner panel's report in classifying the petitioner in the very high severity category under the offense behavior guidelines because the former was "based substantially on hearsay and not irrefutable", and the latter was not available to the petitioner or his counsel. There is, however, no authority for these conclusions. See Brown v. Lundgren, 528 F.2d 1050, 1055 (5 Cir. 1976). On the contrary, the Regional Board has not only the right but the duty to see and examine both of them, and consideration of them is not barred because they may contain hearsay.
 
 
 22
 The district court also faulted the Board because neither the petitioner nor his counsel had an opportunity to see the presentence report before the hearing on December 11th, 1974 and because the examiner panel's report was kept from them and they were not able to see it before it was forwarded to the Regional Director for the Directors' meeting of January 13, 1975. The petitioner through his counsel is demanding a kind of discovery and disclosure in advance of any consideration by the Board of his eligibility for parole. This Circuit has held, however, that even after parole is denied such discovery is not "required as part of the minimum due process to be accorded the parole applicant." Haymes v. Regan, 525 F.2d 540, 542 (2 Cir. 1975). But the petitioner who has been denied parole is entitled to a written statement setting forth "both the grounds for decision to deny him parole, and the essential facts from which the Board's inferences have been drawn." Haymes v. Regan, supra, at 544. The petitioner, therefore, has no such constitutional right to the information in the Parole Board's file, including but not limited to the presentence report and the examiner panel's report.[8] It was error for the district court to hold to the contrary. Moreover, there is in the record uncontradicted evidence that Billiteri and his attorney, in fact, did receive a copy of that presentence report prior to the district court's own hearing on the offense severity issue. They had full opportunity at that hearing to rebut any or all of the statements contained therein and to point out to the court any particular prejudice suffered by the petitioner from not having been apprised of its contents but they made no attempt to do so. Rather Billiteri's counsel took the position that the Parole Board had no right to see it at all and could not go back of, or beyond, Billiteri's plea of guilty to the conspiracy charge. This argument is wholly untenable as we have just pointed out above. See Brown v. Lundgren, supra.
 
 
 23
 Billiteri further argues that his counsel should have been allowed to appear before the Regional Directors when they met in Kansas City. Neither the petitioner nor his counsel had a right to appear before the Regional Directors. Buchanan v. Clark, supra, at 1380. They had already appeared before the examiner panel at the December 11th hearing pursuant to the leave granted by the Board's regulations. This panel constituted the investigative body which made up the hearing summary and forwarded it together with the case record to the five regional directors who made the decision to grant or deny parole. The record discloses that petitioner and his counsel were given every opportunity to hear and be heard by the examiner panel. This Circuit has not recognized any constitutional right to have counsel present at a parole release hearing; it is, therefore, within the discretion of the Parole Board whether or not to permit such attendance before the Regional Directors. Billiteri, himself, never asked to appear before the Directors. Cardaropoli v. Norton, 523 F.2d 990 (2 Cir. 1975).
 
 
 24
 The third and last point raised by the Parole Board in its appeal is whether the district court exceeded its authority in ruling that the Board had before it insufficient evidence to deny parole to the petitioner. We have heretofore discussed the trial court's determination that nearly all of the evidentiary material before the Board, on which its denial of parole was predicated, was incompetent or irrelevant and could not properly be considered by the Board in passing upon a prisoner's eligibility for parole. We have overruled the district court's determination of this issue and we conclude, on the contrary, that the Board was entitled to consider the evidence before it and that the proof was more than sufficient to support the Board's decision. The district court has no power to substitute its own discretion for that of the Board. If the court has found that the Board has abused its discretion, it may remand the case to the Board with instructions for correction. If the case was before the court on a petition for habeas corpus, it may order compliance within a reasonable period, failing which it may order the petitioner discharged from custody.
 
 
 25
 Although we have felt it advisable to discuss, to a limited degree, the issues raised in this case which bear on the relative functions of the Parole Board and the reviewing court, there is an additional issue which undercuts the consolidated cases adjudicated by the district court now before us on appeal, and that is, the matter of jurisdiction. In neither of these cases did the petitioner make any jurisdictional allegations. In his brief he asserts that the district court had jurisdiction through (1) habeas corpus, 28 U.S.C. § 2241, et seq., (2) mandamus, 28 U.S.C. § 1361, and (3) the Administrative Procedure Act, 5 U.S.C. § 701, et seq.
 
 
 26
 At the time of bringing the actions the petitioner was a prisoner, confined in the Federal Penitentiary at Lewisburg, Pennsylvania. The district court found that it had jurisdiction under the Administrative Procedure Act (the Act). But this Circuit has not, up to the present time, held that the Act provides a grant of subject matter jurisdiction. Aguayo v. Richardson, 473 F.2d 1090, 1120 (2 Cir. 1973); Mills v. Richardson, 464 F.2d 495, 1001 n. 9 (2 Cir. 1972). In view of the fact that Billiteri not only attacks the Parole Board's procedures in decision-making on constitutional grounds, but also puts into issue the fact or the duration of his physical imprisonment, we reject the use of this case as a vehicle to declare that the Act does provide such a grant, because it would be particularly inappropriate.
 
 
 27
 Another jurisdictional basis advanced by the plaintiff-appellee is mandamus. 28 U.S.C. § 1361 provides:
 
 
 28
 "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."
 
 
 29
 The prerequisites to the issuance of a writ of mandamus have been stated as (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the defendant's part to do the act in question; and (3) lack of another available, adequate remedy. Lovallo v. Froehlke, 468 F.2d 340, 343 (2 Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973), citing United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543-44, 57 S.Ct. 855, 81 L.Ed. 1272 (1937).
 
 
 30
 Billiteri's residence, before he was imprisoned at Lewisburg, Pennsylvania, was in the Western District of New York, and it was in this district that he was indicted, convicted and sentenced. The venue for seeking mandamus before the court in that district was proper, 28 U.S.C. § 1391(e), and the allegations of the complaint in Docket Civ. 74-365, if proven, would constitute proper bases for the issuance of a writ of mandamus. They assert that the Board failed to comply with its own regulations, that the hearing procedures of the Parole Board denied Billiteri his right to due process, and that the Parole Board's conclusions were arbitrary, capricious and unlawful. Lovallo v. Froehlke, supra, at 343; Leonhard v. Mitchell, 473 F.2d 709 (2 Cir.), cert. denied, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973); Workman v. Mitchell, 502 F.2d 1201, 1205 (9 Cir. 1975); and Kahane v. Carlson, 527 F.2d 492 (2 Cir. 1975) (in which mandamus was approved to compel federal prison authorities to recognize the petitioner's First Amendment rights). Likewise similar relief by way of mandamus could have been sought with regard to the complaint in Docket Civ. 74-580 had it been directed against the Bureau of Prisons and timely raised.
 
 
 31
 We hold that the allegations in the complaint in Docket No. 74-365 were sufficient to warrant consideration of the issuance of a writ of mandamus under § 1361, and to that extent this court has jurisdiction; but the evidentiary material placed in the record by the parties, which we have held was competent and relevant for use by the Board, fails completely to support those allegations. Specific mention should, however, be made of the allegations in Docket No. 74-580 which charged that Billiteri was arbitrarily designated as one identified with organized crime and that he had never been given any opportunity in an adversary hearing to contest this designation. At that stage of the proceedings Billiteri was not entitled to such a hearing. It is not the Parole Board which originates or makes this designation but the Bureau of Prisons. There is no way that petitioner can have his classification changed by application for mandamus against the Parole Board. This question is thoroughly discussed in an opinion by Chief Judge Kaufman in Cardaropoli v. Norton, supra.
 
 
 32
 The evidence in the record, practically all of which Billiteri sought to have declared incompetent and which subsequently was erroneously rejected in large measure by the district court, as we stated above, was properly considered by the Parole Board, and it amply supports the Board's determination in that case in the sound exercise of its discretion. The district court was in disagreement with the Board's decision, and, after, the Board had failed to exercise its discretion in compliance with certain instructions by the district court as to the procedures it must follow and the evidentiary material it could consider, the district court decided to hold its own parole and offense severity classification hearing. At its conclusion, the district court ordered Billiteri released on parole and thereby substituted its own discretion for that of the Board as well as that of the Bureau of Prisons. But the mere fact that the court disagreed with the Board's exercise of its discretion does not furnish an acceptable or appropriate basis for issuance of a writ of mandamus. Leonhard v. Mitchell, supra.
 
 
 33
 To the extent that the petitioner has sought to reach, by mandamus, the use by the Parole Board of the Bureau of Prisons' classification of Billiteri as a "special offender" and the resulting "oj/oc" referral, he must attack the Regional Director's decision to refer the case to the five Regional Directors. This decision was likewise a pure matter of discretion and such an attack would necessarily fail.
 
 
 34
 There is, therefore, nothing in the record of this case which would justify the granting of a writ of mandamus by this court.
 
 
 35
 Another reason why mandamus relief should not be ordered in this case, is the nature of the remedy which the plaintiff-appellee sought and which the district court ordered. While neither of the complaints in the two consolidated actions alleges any jurisdictional facts, the relief prayed for in # 74-365 asks the court to order that the plaintiff be placed on parole, and in # 74-580 the request is that Billiteri be discharged from custody. The district court, in effect, sought to grant a conditional release which, upon failure of the condition, called for the release of Billiteri on parole. Both forms of relief asked for, i. e. complete discharge or release on parole, are properly sought through habeas corpus under 28 U.S.C. § 2241, but not through a petition for a writ of mandamus under 28 U.S.C. § 1361. See Kahane v. Carlson, supra, at 496-500 (Friendly, J., concurring).
 
 
 36
 Although in Preiser v. Rodriquez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the petitioner was a state prisoner seeking release on a civil rights basis under 42 U.S.C. § 1983, which would thereby avoid the necessity of exhausting state remedies as habeas corpus would require, the Supreme Court held that his only federal remedy was a writ of habeas corpus. In writing for the majority, Justice Stewart said,
 
 
 37
 "What is involved here is the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus. Upon that question, we hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."
 
 
 38
 In our opinion the same holding would apply if release were sought by way of a writ of mandamus or pursuant to the Administrative Procedure Act. Habeas corpus was Billiteri's sole source of remedy.
 
 
 39
 We now turn to the petitioner's claim that habeas corpus supplies a jurisdictional foundation for the relief requested. This, however, serves only to confront the petitioner's case with an additional ground for dismissal.
 
 
 40
 Title 28 U.S.C. § 2242 provides that an application for a writ of habeas corpus shall "name . . . the person who has custody over" the petitioner, and § 2243 provides that the writ, or order to show cause, "shall be directed to the person having custody of the person detained." Despite the willingness of courts in recent years to broaden the concept of "custody" beyond the simple status of present imprisonment, see, e. g., Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), it still remains an essential aspect of the habeas corpus writ that it acts "upon the person who holds (the prisoner) in what is alleged to be unlawful custody." Braden, supra, 410 U.S. at 494-95, 93 S.Ct. at 1129, citing Wales v. Whitney, 114 U.S. 564, 574, 5 S.Ct. 1050, 29 L.Ed. 277 (1885). In order for a court to entertain a habeas corpus action, it must have jurisdiction over the petitioner's custodian. Braden, supra; Strait, supra; Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971); United States ex rel. Rudick v. Laird, 412 F.2d 16 (2 Cir.), cert. denied, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969).
 
 
 41
 In the present case, Billiteri's custodian throughout the district court litigation was the Warden at the Federal Penitentiary at Lewisburg, Pennsylvania, where Billiteri was incarcerated. The Warden, however, was never named as a respondent in the proceedings. The Board of Parole, which was so named, was not Billiteri's custodian. Olson v. California Adult Authority, 423 F.2d 1326 (9 Cir.), cert. denied, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970). There are, to be sure, circumstances where a parole board may properly be considered a custodian for habeas corpus purposes, e. g., after a prisoner has been released into its custody on parole, see Jones v. Cunningham, supra, or arguably, when the Board itself has caused a parolee to be detained for violation of his parole, see Lee v. United States, 501 F.2d 494, 501 (8 Cir. 1974). But it would stretch the meaning of the term beyond the limits thus far established by the Supreme Court to characterize the Parole Board as the "custodian" of a prisoner who is under the control of a warden and confined in a prison, and who is seeking, in a habeas corpus action, to be released from precisely that form of confinement. At that point the prisoner's relationship with the Parole Board is based solely on the fact that it is the decision-making body which may, in its discretion, authorize a prisoner's release on parole.
 
 
 42
 It would have imposed no great hardship on Billiteri to have brought his action against the Warden in the Middle District of Pennsylvania, as he should have done. As he did not, the present case must be dismissed for lack of jurisdiction over an application for a writ of habeas corpus, which is the only appropriate means for testing out his claims to achieve the special relief requested.
 
 
 43
 The somewhat unusual course followed in this opinion of discussing the facts, with comments on the merits, before taking up the jurisdictional issue, stems from the hope that this arrangement would better set out the issues in the whole context of the case. It is, in our opinion, one of the sets of circumstances which Judge Gurfein had in mind in his astute footnote comment in Lovallo v. Froehlke, supra, at 344 n. 6, which says:"In reviewing a denial of a petition for mandamus, it is sometimes helpful to consider the merits before determining whether the jurisdictional requirements for mandamus have been met." (Citations omitted.)
 
 
 44
 The order of the district court is reversed, and the petitions are dismissed.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 While this case was being appealed, Congress enacted the Parole Commission and Reorganization Act, Pub.L.No. 94-233, signed into law on March 15, 1976, which repealed the existing provisions of Title 18 relating to parole and substituted a new chapter therefor. The new section establishing the time of prisoners' parole eligibility is 18 U.S.C. § 4205. Statutory citations in this opinion refer, unless otherwise stated, to the former provisions of Title 18 in effect at the time Billiteri was first denied parole
 
 
 [2]
 The Parole Commission and Reorganization Act, see note 1 supra, replaced the Board with a United States Parole Commission. 18 U.S.C. § 4202, as enacted by Pub.L.No. 94-233. The previous appellation is retained in this opinion
 
 
 [3]
 The guidelines in effect in March, 1974, are set forth in Battle v. Norton, 365 F.Supp. 925, 934 (D.Conn.1973) (offense characteristics) and Grasso v. Norton, 371 F.Supp. 171, 173 n. 1 (D.Conn.1974) (salient factors)
 
 
 [4]
 Because of statutory "good time" allowances earned by Billiteri, see 18 U.S.C. §§ 4161 and 4162, he would have been entitled to release from prison after serving approximately 40 months of his five-year sentence
 
 
 [5]
 The district court stated, however, that "the disclaimer has a hollow ring," apparently because at Billiteri's December 11 hearing the examiner panel had questioned him, on the basis of information in his presentence report, about his connection with organized crime. Billiteri v. United States Bd. of Parole, 391 F.Supp. 260, 263 (W.D.N.Y.1975). In its later opinion in Billiteri v. United States Board of Parole, 400 F.Supp. 402, 409 (W.D.N.Y.1975), the court revised this conclusion by stating that the Board ". . . did not rely on this fact in reaching its ultimate determination . . . ."
 
 
 [6]
 In this connection it is unfortunate that the Parole Board has not specified in its guidelines how the crime of conspiracy is to be evaluated in relation to the seriousness of the underlying substantive offense an oversight which is especially serious in view of the high frequency with which persons enter the federal correctional system convicted under the conspiracy rubric. In promulgating the guidelines required by § 4203(a)(1) of the new act, see note 1 supra, it is to be hoped that the Parole Commission will make provision for this sizeable omission
 
 
 [7]
 It should be noted that Billiteri III, while a separate opinion, is not a separate action but a continuation of Billiteri II
 
 
 [8]
 Under the new act, see note 1 supra, however, a prisoner now has the statutory right under § 4208(b) to this type of information, subject to the limitations stated therein