George **SIMPSON**, Petitioner,

v.

Robert **GUNNELL**, et al., **Respondents.**

Civ. No. B–82–136.

United States District Court,
D. Connecticut.

Nov. 29, 1982.

David Cole, Intern, John L. Pottenger, Jr., Renee D. Chotiner, Stephen Wizner, P.J. Pittman, Jerome N. Frank Legal Services Organization, New Haven, Conn., for petitioner.

Barry K. Stevens, Asst. U.S. Atty., Alan H. Nevas, U.S. Atty., Bridgeport, Conn., for respondents.

DALY, Chief Judge.

## RULING ON HABEAS CORPUS PETITION

This is the second time this petition for a writ of habeas corpus has come before this Court. Petitioner challenges the propriety of his offense severity rating and the Parole Commission's decision to set his presumptive parole date "above the guidelines."

The pertinent facts are as follows: On December 18, 1979, petitioner pleaded guilty to three counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a) and one count of unlawful possession of firearms. He received two ten-year sentences on two of the drug counts, a five-year sentence on the third drug count, and a one-year sentence on the gun count; all sentences were to run concurrently and were aggregated to a total term of 10 years.[1] Petitioner concedes that all these charges arose from a single incident. (*See* Memorandum of Law in Support of Petition for Writ of Habeas Corpus, p. 3.) He began serving his sentences on February 14, 1980.

On February 19, 1981, the petitioner's initial parole hearing was held. Evidence before the hearing examiners included the presentence report and reports submitted by the U.S. Attorney's Office for the District of Columbia. The reports revealed that the charges followed the execution of a search warrant at Mr. Simpson's residence which resulted in the seizure of over $7,000.00, quantities of heroin, marijuana, cocaine, cutting materials, other controlled substances, four firearms, ammunition, and a quantity of other property, including 11

---

1. "When multiple sentences are 'aggregated' the result is that such sentences are considered to have merged into a single sentence equal to the total length of time that the multiple sentences will require the prisoner to serve. Aggregation produces ... a single parole eligibility date," 45 Fed.Reg. 44924–25 (1980).

cameras, 10 items of stereo equipment, and 9 television sets. Separate charges against petitioner relating to these latter, allegedly stolen goods had been dismissed in the District of Columbia Superior Court for failure to prove the goods were, in fact, stolen. At the parole hearing, petitioner was questioned about the dismissed charges; he denied any knowledge that the goods were stolen.

The Hearing Examiners set petitioner's Offense Severity Rating at "Very High" and his Salient Factor Score at 7 ("Good"), and recommended a presumptive parole date of February 1, 1985 (requiring petitioner to serve 60 months, 12 months longer than the time set forth in the Commission's guidelines for an individual with a "very high" offense severity rating and a salient factor score of 7). *See* 28 C.F.R. § 2.20. The Regional Commissioner affirmed. On further appeal, the U.S. Parole Commission changed petitioner's Salient Factor Score to 8, but left unchanged the presumptive parole date. The Notice of Action indicated that the Offense Severity Rating ("Very High") had been assigned because of the total amount of seized drugs in addition to the possession of the firearms. The guidelines classify each of the offenses separately as "High" severity. The decision to go above the guidelines was based on 1) the on-going nature of petitioner's narcotics business; 2) the fact that petitioner's record included a 1977 drug-related conviction; and 3) the conclusion of the Parole Commission that petitioner had exchanged stolen goods for drugs.

On February 19, 1982, petitioner filed a petition for a writ of habeas corpus, asserting, *inter alia,* that the Commission had improperly set his Offense Severity Rating at "Very High" by incorrectly aggregating the amount of drugs involved. Without reaching petitioner's alternative grounds, the Court ordered a new parole hearing, concluding that the total quantity of drugs constituted only 12.9% of the minimum total amount for the "Very High" category,

and, thus, to the extent the "Very High" rating was based on the cumulative amount of drugs in petitioner's possession, it was error. *Simpson v. Gunnell,* Civ. No. B–82–136, Apr. 8, 1982, modified, Apr. 29, 1982.

On reconsideration of petitioner's case, the United States Parole Commission retained the same Offense Severity Rating, Salient Factor Score, and presumptive parole date (after 60 months). The Notice of Action stated:

"Your offense behavior has been rated as very high severity because you have committed multiple offenses, each of which alone, would be rated at high severity: (A) a drug offense during which the following drugs were seized: the equivalent of .13611 grams of 100% heroin, 312.247 grams of marijuana, 21 percodan pills, 23 valium pills, 3 ritalin tablets, and 1 methamphetamine tablet; (B) you illegally possessed multiple firearms. Your salient factor score (SFS 81) is 5. . . . Your salient factor score and guideline range previously have been computed at 8 points and 36–48 months respectively. At the time of your original computation of your salient factor score, 8 points indicated that you are a "good" parole risk. The score of 8 points, indicating that you are a "good" parole risk, and guidelines of 36–48 months remain your official salient factor score and guideline range. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: You operated an on-going narcotics distribution business distributing both narcotics and cutting materials, which you resumed after your 1977 conviction for a similar offense. Further, you encouraged drug addicts to commit crimes so they would exchange stolen items for drugs. As required by law, you have also been scheduled for a statutory interim hearing during February, 1983.[2]

**2.** The discrepancy between the two salient factor scores is explained by documents submitted

by counsel. These reveal that a new scoring system for salient factor scores was adopted in

Simpson then renewed his petition for habeas corpus relief, asserting, first, that the Parole Commission may not consider the weapons offense in calculating his offense severity rating because the one year sentence for that conviction had expired by the time the Parole Commission computed his offense severity rating. He claims that the *ex post facto* clause of the United States Constitution prohibits the application of an amendment to the Parole Commission's guidelines which specifically authorizes consideration of such sentences.

Second, petitioner claims that the decision to go above the guidelines is improper because 1) the conclusion that the narcotics business was "on-going" in nature is at odds with standards in the Commission's Procedures Manual, 2) applicable statutes and regulations give Mr. Simpson a constitutionally protected liberty interest, the infringement of which is a denial of due process, 3) the Parole Commission failed to adhere to the required standard of proof—preponderance of the evidence—in concluding that petitioner had exchanged stolen goods for drugs and 4) the Parole Commission improperly considered the same factors twice: first, in applying the guidelines to petitioner and then, in going above them. The Court turns first to the issue of the offense severity rating.

## I. The Propriety of the Offense Severity Rating

An amendment to the Parole Commission's guidelines, "General Note E", was adopted and became effective in 1980, after petitioner committed the offenses for which he was charged and after he was sentenced on those charges. General Note E provides as follows:

"In cases where multiple sentences have been imposed (whether consecutive or concurrent, and whether aggregated or not) an offense severity rating shall be established to reflect the overall severity of the underlying criminal behavior. This rating shall apply whether or not any of the component sentences has expired."

28 C.F.R. § 2.20.

Petitioner contends that General Note E represents a change in the law, as established by at least one District Court, specifically Judge Muir's decision in *Silberberg v. U.S. Parole Commission,* 483 F.Supp. 1280 (M.D.Pa.1980), and, consequently, he claims, the application of General Note E to his case would constitute an *ex post facto* violation.

The Court is of the view that *Silberberg* is clearly distinguishable from petitioner's case, and thus would not control here in any event. Further, the Court believes that the *Silberberg* holding and General Note E are not in conflict and that General Note E therefore does not represent a change in the law. Hence, petitioner's ex post facto claim must be rejected.

The facts in *Silberberg* are somewhat unique. In March, 1975, Silberberg received a one-year sentence for mail fraud, but failed to surrender to prison authorities on the appropriate date. He was apprehended in March of 1977, at which time he began serving his one-year sentence. While serving that sentence, he was tried and convicted on unrelated charges of conspiracy and interstate transportation of forged securities, for which he received a 15-month sentence to run consecutively to his one-year mail fraud sentence. In May of 1978, subsequent to the conspiracy and forgery convictions and sentencing, and after his mail fraud sentence had expired, he was sentenced to a four-year term on a charge of bail jumping, arising out of his failure to surrender to begin serving his mail fraud sentence. That sentence was to run concurrently with his 15-month sentence for conspiracy and forgery. Finally, in March of 1979, the Parole Commission held a parole hearing to determine Silber-

August, 1981. Under the new system, petitioner's salient factor score was determined to be 5. The Commission properly applied the method in effect at the time of petitioner's initial parole hearing, which resulted in a salient factor score of 8. Under those regulations, a salient factor score of 8 was equivalent to a "good" parole prognosis.

berg's presumptive parole date. By that time, of course, the mail fraud sentence had expired and he had, at most, three months left on his conspiracy and forgery sentence. Nonetheless, the Parole Commission, in determining Silberberg's offense severity rating, considered his prior mail fraud conviction and the conspiracy and forgery conviction. On this basis, the Parole Commission determined his offense severity rating to be Greatest I.

In a habeas corpus petition, Silberberg argued that the Parole Commission improperly considered his prior fraud, conspiracy and forgery convictions, the sentences for which had expired, and that it should only have considered the severity of the bail jumping charge—the only conviction for which he was still serving time. Judge Muir agreed, holding that the Parole Commission could not consider *prior convictions,* the sentences for which had expired, in determining a prisoner's offense severity rating, although it could consider such prior convictions in determining an offender's salient factor score. In so holding, Judge Muir noted that "in determining a parole date under the guidelines, the only relevant offense severity is the one applicable to that crime." *Silberberg, supra,* 483 F.Supp. at 1283.

This Court believes that Judge Muir correctly decided the Silberberg case, and agrees with his ruling that the Parole Commission cannot consider prior convictions, the sentences for which have expired, in determining prisoner's offense severity rating on a crime later committed and later punished. A hypothetical situation may be helpful in clarifying that proposition. Had Silberberg surrendered to the prison authorities in 1975, and served his one-year mail fraud sentence and been released in 1976, only to be subsequently convicted of and sentenced for the crime of conspiracy and interstate transportation of forged securities in 1977, the Parole Commission, in determining Silberberg's *offense severity rating* would not be permitted to consider the earlier mail fraud conviction. To take it a step further, the Parole Commission could not properly consider an offense committed in 1970, the sentence for which expired in 1975, in determining the offense severity of a crime committed in 1982, and for which the offender is currently incarcerated.

However, petitioner Simpson's case is quite different. In 1979, petitioner pled guilty to possession of controlled substances and unlawful possession of firearms. The disposition of the two charges was thus simultaneous. The underlying criminal behavior, to which Simpson pleaded guilty, included both the possession of drugs and the possession of firearms, and it was this entire criminal behavior which the Parole Commission considered—and correctly so in this Court's view—in determining petitioner's offense severity rating. Unlike the situation in *Silberberg,* the Parole Commission did not consider any prior conviction in determining petitioner's offense severity. Rather, as noted, it considered the total behavior underlying simultaneous guilty pleas to three counts in an indictment. In *Silberberg,* in contrast, there were three separate convictions, each of which was based on separate unrelated criminal conduct, the punishment for some of which had already been completed.

The fact that, in the instant case, the one-year concurrent sentence on the gun charge had technically expired is not controlling. Certainly, had the sentencing judge imposed no sentence on Simpson for the gun charge, or had he suspended execution of that sentence, the Parole Commission could not be precluded from considering that charge as an aggravating factor in the total offense behavior in determining Simpson's offense severity, 28 C.F.R. § 2.19(c). *See also, Wyatt v. U.S. Parole Commission,* 571 F.2d 1089 (9th Cir.1977), *Billiteri v. U.S. Board of Parole,* 541 F.2d 938 (2d Cir.1976), *Bistram v. U.S. Parole Board,* 535 F.2d 329 (5th Cir.1976), *Payton v. Thomas,* 486 F.Supp. 64 (S.D.N.Y.1980), *McArthur v. U.S. Board of Parole,* 434 F.Supp. 163 (S.D.Ind.1976). The imposition of a concurrent sentence for that offense, even if technically expired, cannot be held

to preclude the Parole Commission from considering that part of the total criminal conduct.

Indeed, General Note D, in effect at the time of petitioner's offense, provides: "If an offense behavior involved multiple separate offenses, the severity level may be increased." General Note E, at least as this Court interprets it, does nothing more than make clear that, when applying General Note D, it is immaterial whether or not one or more of the sentences has expired. It does not permit the Parole Commission to consider prior convictions, the sentences for which expired before the offender was convicted for a new offense, in determining the severity of the total behavior underlying the new offense. Thus, *Silberberg* and General Note E are not in conflict. *Silberberg* is, in any event, inapposite to petitioner's case. Without regard to General Note E, the Parole Commission's consideration of petitioner's gun charge was permissible under *Silberberg* and under General Note D and, therefore, no ex post facto violation occurred as a result of that consideration.

■ Petitioner Simpson also contends that the Parole Commission's use of the weapons conviction to determine the severity of the other conviction subjected him to double jeopardy for the weapons offense in that it added 16–22 months to his sentence—in effect, punishing him twice. The petitioner asserts that the protections against double jeopardy apply to parole proceedings. He notes that parole determinations have been recognized as an extension of the sentencing process, Petitioner's Reply Memorandum of Law at 7–8. He reasons that since the double jeopardy clause prohibits multiple punishments as well as multiple prosecutions, *Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975), parole determinations must therefore be subject to the double jeopardy clause. This view has been rejected consistently. The double jeopardy clause applies to judicial proceedings, not parole, *Priore v.*

*Nelson,* 626 F.2d 211 (2d Cir.1980). The sentencing judge sets the maximum sentence; denial of parole merely maintains the status quo. It does not punish a second time, *Roach v. Board of Pardons and Paroles, State of Arkansas,* 503 F.2d 1367 (8th Cir.1974). *See also, Wyatt v. U.S. Parole Commission,* 571 F.2d 1089 (9th Cir.1977); *Bistram v. U.S. Parole Board,* 535 F.2d 329 (5th Cir.1976); *Payne v. U.S.,* 539 F.2d 443 (5th Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1131, 51 L.Ed.2d 554; *Jones v. Salisbury,* 422 F.2d 1326 (6th Cir.1970), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 69; *United States ex rel. Carrasquillo v. Thomas,* 527 F.Supp. 1105 (S.D.N.Y.1981), *aff'd,* 677 F.2d 225 (2d Cir.1982). Moreover, the effect of the aggregation of sentences[3] is that the one-year sentence is merged with the two 10-year sentences to form a single unified term of 10 years, 45 Fed.Reg. at 44925 (1980). Thus no second punishment was imposed.

In sum, the Court holds that the Parole Commission properly considered the weapons offense in determining the overall offense severity. In doing so, the Commission neither violated the *ex post facto* clause nor inflicted multiple punishment on the prisoner.

## II. Going Above the Guidelines

■ Title 18 U.S.C. § 4206(c) states that determinations above or below the guidelines may be made for good cause, provided the prisoner receives a statement of reasons, including a summary of the information relied upon. 28 C.F.R. § 2.20(c) provides that "these time ranges are merely guidelines. Where circumstances warrant, decisions outside the guidelines ... may be rendered." The discretion of the Parole Commission to depart from the guidelines in appropriate cases has been recognized by courts repeatedly. *See e.g., Dioguardi v. United States,* 587 F.2d 572, 575 (2d Cir. 1978); *Billiteri v. United States Board of Parole,* 541 F.2d 938 (2d Cir.1976). Also, the authority to grant or deny parole is

3. *See* note 1, *supra.*

vested solely in the Parole Commission, 18 U.S.C. § 4218(d), 28 C.F.R. § 2.18. A court has no jurisdiction to substitute its own discretion for that of the Commission, *Billiteri, supra;* the standard for review is merely whether there is a rational basis for the decision, *Zannino v. Arnold,* 531 F.2d 687 (3d Cir.1976) or an "abuse of discretion . . . resulting in an abridgement of petitioner's constitutional rights", *Smaldone v. United States,* 458 F.Supp. 1000 (D.Kan. 1978). With these principles in mind the Court turns to petitioner's claim that the Commission abused its discretion in going above the guidelines.

■ The Notice of Action states that a decision above the guidelines was warranted in Mr. Simpson's case because of the "following aggravating factors: you operated an on-going narcotics distribution business . . . which you resumed after your 1977 conviction for a similar offense." Simpson's first contention is that the Parole Commission is limited by its Procedures Manual to a definition of "on-going" as exceeding the duration of one year. The pertinent portion of the Procedures Manual is a list of examples of situations where decisions above the guidelines are warranted. Under "Reasons Related to Parole Prognosis", it reads "on-going criminal behavior for a period of years." Simpson's drug distribution activities lasted 4–5 months. According to petitioner, once the manual defines a category as "on-going for a period of years", it may not then determine that an activity lasting only a period of months is also "on-going".

The Court rejects this argument. It is apparent that the language relied upon by petitioner was not applied by the Parole Commission in this case and thus is irrelevant. The Notice of Action stated that the on-going nature of petitioner's narcotics business was an aggravating factor of that offense, not a reason "related to parole prognosis". The Court notes that the preceding section of the Procedures Manual, under the heading "Reasons Related to Aggravating Offense Factors" includes an example that reads: "you were part of an on-going heroin smuggling operation. . ." In that context, on-going is not limited, expressly or implicitly. The Court is of the opinion that the on-going nature of an offense that lasts a period of months may properly be considered as an aggravating factor. Thus the Court concludes that the Commission properly interpreted its own guidelines and acted within its discretionary authority.

Petitioner's second assertion is that the Parole Commission's alleged violation of its guidelines is an infringement upon petitioner's constitutionally protected liberty interest in his expected release on parole. The Court does not need to address this point since it has concluded that the Parole Commission did not violate the guidelines.

■ Third, petitioner disputes the Commission's conclusion that he "encouraged drug addicts to commit crimes so they would exchange the stolen items for drugs", pointing out that the stolen goods charges were dismissed for lack of proof. It is well settled that the Commission may consider any information relating to the offense or the prisoner that may reasonably be available, 28 C.F.R. § 2.19, including dismissed charges, *Billiteri v. U.S. Board of Parole,* 541 F.2d 938 (2d Cir.1976); *United States ex rel Carrasquillo v. Thomas,* 527 F.Supp. 1105 (S.D.N.Y.1981), aff'd 677 F.2d 225 (2d Cir.1982); *Payton v. Thomas,* 486 F.Supp. 64 (S.D.N.Y.1980); *Lupo v. Norton,* 371 F.Supp. 156 (D.Conn.1974).

■ The evidence substantiating the charge relating to stolen goods included petitioner's admission in the presentence report, business records in petitioner's handwriting and a list of the items seized from petitioner's residence. Except, perhaps, in extreme cases, it is not normally the function of the court to review the credibility of the evidence considered by the Commission in exercising its discretion, *Payton v. Thomas, supra; Billiteri, supra.* "The inquiry is not whether the Board is supported by the preponderance of the evidence or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied

**28**

in its statement of reasons", *Zannino v. Arnold,* 531 F.2d 687, 691 (3d Cir.1976).[4] The Court concludes that the evidence before the Commission amply provided a rational basis for the Commission's conclusion that petitioner Simpson encouraged addicts to commit crimes.

 Petitioner also disputes that his 1977 conviction—for possession of chloromycetin and uttering a false prescription for dilaudid—was a "similar offense". While those offenses were not identical to the instant offense, the fact that petitioner continued to involve himself with illegal drug transactions after his 1977 conviction is a sufficient factual basis for the Commission's conclusion that his prior offense was similar.

 Petitioner's fourth allegation is that the Parole Commission improperly used the same information first, in applying the guidelines to him, and then, in determining to go above them. The facts of this case do not ·present this issue since an examination of the Notice of Action shows that separate considerations were made. As noted above, the "Very High" severity rating was based on the fact that petitioner committed two separate "High" severity offenses, the drug-related offense and the possession of firearms. The decision to go above the guidelines was based on different factors—the on-going nature of petitioner's narcotics business, the·similarity of the 1977 offense and his involvement with stolen goods. Thus the Court concludes that the Commission did not abuse its discretion in determining to retain in custody longer than indicated by the guidelines.

For all the foregoing reasons, the petition for a writ of habeas corpus is denied.

Dated this 24th day of November, 1982, at Bridgeport, Connecticut.

---

4. The Court notes that according to the Commission's regulations, disputes as to the accuracy of the information before it shall be resolved "by the preponderance of the evidence standard; that is, the Commission shall rely on

such information only to the extent that it represents the explanation of the facts that best accords with reason and probability", 28 C.F.R. § 2.19(c). The Court finds that the evidence met the Commission's own standard of proof.