**Robert CARDILLO, Plaintiff**
**v.**
**THE ATTORNEY GENERAL OF THE UNITED STATES, et al., Defendants**

**No. 79-1891-MC**

United States District Court
Commonwealth of Massachusetts

**July 31, 1981**

**Philip W. Halloran,** counsel for plaintiff
**Greg Flynn,** counsel for defendants

### MEMORANDUM AND ORDER
**McNAUGHT, D.J.** This matter is before the Court on the defendants' motion to dismiss or for summary judgment. Counsel appeared before the Court and agreed that the Court should decide the matter on the pleadings and other matters submitted to the court without the benefit of oral argument.

Plaintiff was released on June 28, 1979 from the federal penitentiary in Lewisburg, Pennsylvania and has been under the supervision of the Parole

Commission authorities since his release. In Count I of his complaint, filed **pro se,** he alleges that the government officials who computed his maximum term, originally imposed in September, 1971, and revised in August, 1975 by the United States District Court for the Southern District of Florida, wrongfully deprived him of his liberty in violation of his rights under the Fifth Amendment, 18 U.S.C. sec. 3568, and applicable law. In Count II, plaintiff alleges that Parole Commission authorities, acting in concert, arbitrarily and unlawfully denied him a right to be released as early as January 14, 1976, in violation of his due process rights, in that they applied improper standards, failed to articulate sufficient reasons for denying him parole, and violated federal regulations governing parole proceedings. Plaintiff seeks both injunctive relief restraining Parole Commission authorities from further limiting his freedom and monetary damages.

Defendants argue that dismissal or summary judgment with respect to Count I is mandated under principles of collateral estoppel or **res judicata,** as the issues raised in Count I were previously litigated and disposed of adversely to the petitioner in **Cardillo v. Levi,** No. 76-973 (M.D. Pa. 1976), **aff'd,** No. 76-2663 (3d Cir. 1977). After studying the record in **Cardillo v. Levi,** the Court concludes that the defendants' motion for summary judgment as to Count I must be granted.

In the instant action, plaintiff claims that his release date upon resentencing by the United States District Court for the Southern District of Florida in August, 1975 should have been May 26, 1976, based on a maximum sentence of 7.5 years rather than 13.5 years. By way of background, plaintiff was serving a total of seven sentences for various offenses, subject to a maximum term of 21 years. He filed a motion to vacate sentence pursuant to 28 U.S.C. sec. 2255 in the Southern District of Florida on the grounds that the Court had improperly considered prior invalid convictions when the first three sentences were imposed. Said motion was granted on August 5, 1975, and he was resentenced so that the maximum term for those sentences was reduced to 7.5 years. Adding sentence 4 (3 years, consecutive to sentences 1-3), sentence 5 (3 years, consecutive to sentences 1-4), and sentences 6 and 7 (5 years and 2 years, respectively, concurrent to sentences 1-6), the Bureau of Prisons calculated a maximum term of 13.5 years for the seven sentences.

On July 28, 1976, plaintiff filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania (referred to hereinbefore as **Cardillo v. Levi**), alleging that when sentences 1-3 were vacated and new sentences imposed, sentences 1-3 began to run concurrent with, rather than prior to sentences 4-7. He alleged that his maximum term should have been 7.5 years, and that as of May 26, 1976 he had served his full term, less deductions for good time. The Court ruled that the Bureau of Prisons had correctly computed Cardillo's sentence. The Court found that the federal Court in Florida had vacated only the excessive portions of sentences 1-3; consequently, sentences 1-3 were not void **in toto,** but only to the extent of the excessive portion.

Thereafter counsel for the petitioner filed a motion for amendment of and relief from judgment with a supporting brief and exhibit. The Court denied this motion, and on appeal from the decision of the District Court, the Court of Appeals for the Third Circuit affirmed the judgment below.

If plaintiff's action is properly characterized as a civil rights action in the nature of one implied directly under the Constitution seeking damages for violation of the Due Process Clause of the Fifth Amendment, **Davis v. Passman,** 442 U.S. 228, 234 (1979), principles of **res judicata** and collateral estoppel may be

applied. **Lovely v. Laliberte,** 498 F. 2d 1261 (1st Cir. 1974), **cert. denied,** 419 U.S. 1038 (1974). Of concern to this Court, however, is the fact that plaintiff seeks not only damages, but also injunctive relief equivalent to a request for immediate release from the restraints imposed on him by the Parole Commission. The question arises whether plaintiff's action is also in the nature of a petition for writ of habeas corpus pursuant to 28 U.S.C. sec. 2241, since "custody" for the purposes of habeas corpus relief includes supervisi    while on parole. **Jones v. Cunningham,** 371 U.S. 236, 240-243 (1963); **Harned v. Henderson,** 588 F.2d 12, 13 n.1 (2d Cir. 1978).

Characterization of plaintiff's action is of some significance since traditional notions of **res judicata** do not ordinarily apply in successive habeas corpus proceedings. **Smith v. Yeager,** 393 U.S. 122 (1968). Rather, the provisions of 28 U.S.C. sec. 2244(a) would apply, and the court to whom a second application for a writ of habeas corpus has been made may decline to entertain it if the statutory criteria are met. Subsection (a) provides:

> sec.    2244.    Finality    of determination

> (a) No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not heretofore    presented    and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry.

This subsection has been read as authorizing a court to refuse to consider grounds previously decided on the merits in an earlier habeas corpus proceeding and to consider only those grounds which were not raised before. **Curry v. Wilson,** 405 F.2d 110, 111 (9th Cir. 1968), **cert. denied,** 397 U.S. 973 (1970); **Jones v. State of Montana,** 231 F. Supp. 531, 532 (D. Mont. 1964).

In **Preiser v. Rodriguez,** 411 U.S. 475 (1973), the Supreme Court held that federal habeas corpus actions rather than actions under 42 U.S.C. sec. 1983 were the appropriate and sole vehicle for relief when a state prisoner challenged the duration or fact of his confinement and sought immediate or a speedier release. In view of the nature of the injunctive relief requested by plaintiff, the Court is inclined to treat that portion of the complaint seeking release from the supervision of the Parole Commission as a petition for writ of habeas corpus. **Cf., Pope v. United States,** No. 80-1108 (10th Cir. May 13, 1981) (complaint seeking injunction ordering Commission to grant parole treated as habeas corpus). The allegations contained in Count I present precisely the same ground for relief as advanced in the earlier federal habeas corpus proceeding. As summarized above, after due consideration, the Court in **Cardillo v. Levi** denied the petition on the merits, and his ruling was affirmed on appeal. Consequently, pursuant to 28 U.S.C. sec. 2244(a), this Court is satisfied that justice would not be served by further inquiry into an issue thoroughly litigated and decided adversely to plaintiff in a prior habeas corpus proceeding.

To the extent that plaintiff seeks damages stemming from a denial of constitutional rights in connection with the interpretation of his sentence, the Court now considers the application of **res judicata** or collateral estoppel principles.

In order for either the doctrines of **res judicata** or collateral estoppel to apply, there must be: (1) entry of a final

judgment on the merits in the first action; (2) identity of the causes of action adjudicated (**res judicata**) or identity of the issues fully and fairly litigated (collateral estoppel); and (3) identity or privity of parties in the two actions. **Black Voters v. McDonough,** 421 F. Supp. 165, 168 (D. Mass. 1976), **aff'd,** 565 F.2d 1 (1st Cir. 1977). Courts have permitted a litigant who was not a party to the earlier case to use collateral estoppel defensively, and in some instances offensively, in a second action against the party who did not prevail on the issue in the first action. **Allen v. McCurry,** 101 S.Ct. 411, 49 U.S.L.W. 4015, 4017 (1980). See, **Eisel v. Columbia Packing Co.,** 181 F. Supp. 298 (D. Mass. 1960) (applying Massachusetts law in diversity action).

There is no question that there was an entry of a final judgment on the merits in **Cardillo v. Levi.** The portions of the record submitted by defendants, including copies of petitioner's briefs and motions, demonstrate that Mr. Cardillo, represented by counsel, had a full and fair opportunity to litigate the factual and legal issues surrounding his claim in the earlier action.

A comparison of the claim presented to the Court and resolved adversely to Mr. Cardillo in **Cardillo v. Levi** and that raised in the present action makes clear that the allegations are the same in each case. His petition for writ of habeas corpus was based on the same set of facts and conduct by the sentencing judge and the Bureau of Prisons.

The earlier action was brought in the form of a petition for a writ of habeas corpus against then Attorney General Edward H. Levi and Floyd E. Arnold, Warden of the penitentiary at Lewisburg. The present case, in the nature of a civil rights action, is brought against the United States Attorney General, the United States Parole Commission and various Parole Commission officers. Plaintiff asserts that his liberty is interfered with by the strict supervision of Parole Commission personnel. In addition to injunctive relief against further supervision by Parole authorities, Cardillo seeks monetary damages. The present action might be viewed, therefore, as a different cause of action, rendering the doctrine of collateral estoppel applicable in this instance.

The present Attorney General is a successor to former Attorney General Edward Levi and can be viewed for purposes of **res judicata** or collateral estoppel as the same party. 1B J. Moore, Federal Practice P. 0.411 (2d ed. 1980). While the additional Parole Commission defendants were not parties to the earlier litigation, the Court concludes that this is an appropriate case in which to allow persons who were not parties in the earlier action to assert collateral estoppel defensively with respect to a party who had a full and fair opportunity to litigate the same issues. The liberty interest asserted against the Parole Commission defendants is essentially the same as that asserted against the warden at Lewisburg in the habeas corpus proceeding. It does not appear inequitable in this instance to give these defendants the benefit of the ruling in **Cardillo v. Levi** as to Count I of the complaint where their supervision was initiated as a matter of course upon Cardillo's release from Lewisburg and where their authority over Cardillo is dependent upon and subject to the District Court's ruling in **Cardillo v. Levi,** regarding the commencement and term of Cardillo's sentences. The Court concludes that plaintiff is collaterally estopped from relitigating the same issues which were essential to the judgment in **Cardillo v. Levi.** Since the Court in **Cardillo v. Levi** found and ruled that Cardillo's sentence had been correctly computed by the Bureau of Prisons, no basis exists for a finding that plaintiff has been deprived of his liberty in violation of his Fifth Amendment rights.

Defendants have moved for dismissal of or summary judgment on Count II of

the complaint on the grounds that it fails to state a claim upon which relief can be granted and that the Parole Commissioners are entitled to absolute or qualified immunity. They contend that the affidavit of Joseph A. Nardoza, Commissioner for the Northeast Regional Office of the Parole Commission, and supporting affidavits thereto, demonstrate that the parole authorities followed applicable federal law and regulations in handling Cardillo's case from 1975 through 1978.

In response to defendants' motion, plaintiff argues that procedural due process rights inhere in the procedure whereby parole is granted or denied, and that even if defendants are entitled to a good faith immunity defense, defendants' states of mind are factual issues which do not ordinarily lend themselves to resolution on a motion for summary judgment.

In Count II plaintiff first alleges that he should have been released on parole on January 14, 1976, and that defendants unlawfully relied upon correspondence from Assistant Attorney General Thornburgh and other information in denying his release, which information should have been disclosed to plaintiff under 28 C.F.R. sec. 2.55. Plaintiff further alleges that he would have been released in March, 1978, following parole hearings in October and November, 1977, but for defendants' reliance on the "secret" information which he allegedly had no opportunity to rebut. The substance of his due process claim appears in the complaint as follows:

> The defendants failed to give plaintiff meaningful consideration regarding his parole eligibility, applied improper standards in evaluating the nature of his crime, failed to consider favorable staff and institutional reports as required under Section 4207, failed to state with particularity the reasons for

denying him parole in violation of Section 4206(b), failed to provide him a summary of the material withheld which was considered in making a determination in violation of Section 4208(c) and in effect usurped the power of the sentencing court. All in violation of plaintiff's due process rights under the Fifth Amendment.

Plaintiff's initial parole hearing took place on October 24, 1975. The decision of the hearing examiner panel, subject to review by the Regional Office as provided in then applicable regulations, 28 C.F.R. sec. 2.23 (1975), was to grant plaintiff parole as of January 14, 1976. The Regional Director designated Cardillo's case as one of original jurisdiction pursuant to 28 C.F.R. sec. 2.17, which meant that the decision concerning parole would rest with the Regional Director and National Directors. On December 11, 1975, plaintiff was notified of the Commission's decision to deny him parole and continue his case to October, 1977. This decision was affirmed on appeal. Further institutional review hearings were scheduled for October and November, 1977. After the December, 1977 hearing, the hearing examiner panel recommended that Cardillo be paroled as of March 14, 1978.

Relying in part upon the Thornburgh memorandum (discussed in greater detail hereafter), the Regional Commissioner voted to continue his case for parole as of December, 1979. Upon review by the National Commissioners, the Commission decided to continue his case to the expiration of his sentence.

According to Regional Commissioner Nardoza, in October, 1978 he decided to reopen Cardillo's case upon learning of a communication from Cardillo complaining that his case had not been handled properly (apparently referring to the Thornburgh memorandum). In his affidavit Nardoza states that he decided to schedule a special review hearing so

that Cardillo could view the memorandum and to correct any possible problem with the decision, even though there was no record that Cardillo had requested the information in connection with his December, 1977 hearing. A special review hearing was set for December 5, 1978, at which plaintiff refused to appear.

The Court considers first whether due process is implicated in the context of the Parole Commission's determination that a federal inmate be released on parole. As established in **Board of Regents v. Roth,** 408 U.S. 564, 570-577 (1972), there must be a legitimate claim of entitlement to the right for which due process protection is claimed, rooted in provisions of the Constitution or applicable statutes. This approach was recently employed by the Supreme Court in **Greenholtz v. Nebraska Penal Inmates,** 442 U.S. 1 (1979), wherein the Supreme Court ruled that there is no constitutional or inherent right of a prisoner to be conditionally released before his sentence has expired and examined the language and structure of the state parole statute to determine whether such an expectancy of parole was created so as to entitle an inmate to some measure of due process protection.

The pertinent provision of the parole statute, 18 U.S.C. sec. 4201 **et seq.,** effective until May 14, 1976, provided as follows:

sec. 4203. Application and release; terms and conditions

(a) If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole

. . .

This provision was repealed in 1976 as part of a complete revision of the parole statute, Pub. L. 94-233, sec. 2 (March 15, 1976), and the relevant section applicable as of May 14, 1976 provides:

sec. 4206. Parole determination criteria

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare: subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner **shall be released.**

(b) The Commission shall furnish the eligible prisoner with a written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial.

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, That prisoner is furnished written notice stating with particularity the reasons for

its determination, including a summary of the information relied upon.

(d) Any prisoner, serving a senten. e of five years or longer, who is not earlier released under this section or any other applicable provision of law, **shall be released** on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: Provided, however, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State or local crime. (Emphasis added.)

In **Greenholtz v. Nebraska Penal Inmates, supra,** the Supreme Court ruled that the unique structure of the Nebraska parole statute together with the use of the term "shall" creates an expectancy of release entitled to some degree of constitutional protection. 442 U.S. at 12. In **Bowles v. Tennant,** 613 F.2d 776, 778 (9th Cir. 1980), the Court of Appeals discussed the same issue in connection with the 1976 version of the federal parole statute, commenting:

It is apparent that the mandatory language of the federal parole statute, as qualified by subsection (c), provides an expectation of parole no greater than that provided by the Nebraska statute. Therefore, at most, the federal statute creates a liberty interest entitled to the limited protection of due process held by the majority in **Greenholtz** to apply to parole procedures under the Nebraska statute. We need not define

precisely the process that is due a federal prisoner eligible for parole, nor need we decide whether the federal parole statute creates a liberty interest entitled to the protection of due process at all, because we find that the Parole Commission in this case did not violate the requirements of due process applied by the Court in **Greenholtz,**

See, **Pope v. United States, supra.**

Reviewing the language of section 4203, effective at the time of plaintiff's first parole hearing, in conjunction with the rest of the parole statute and regulations then effective, 28 C.F.R. sec. 2.1 et seq., 40 Fed. Reg. 41328-41342 (September 5, 1975), the Court concludes that no expectancy of release was created upon which a claim of due process protection could be based. The tentative decision to parole plaintiff as of January 14, 1976 first made by the panel of hearing examiners did not create an entitlement to parole on that date, as further review was anticipated and authorized. 28 C.F.R. secs. 2.17, 2.23-2.24 (1975). The language of the statute is permissive rather than mandatory, and substantially greater discretion is committed to the Board of Parole in comparison to that provided under the 1976 enactment.

Turning to the 1976 enactment, and particularly to 18 U.S.C. sec. 4206, the Court has determined that the language structure of the federal statute is sufficiently similar to that of Nebraska scrutinized in **Greenholtz v. Nebraska Penal Inmates, supra,** to require that a similar measure of due process protection be afforded federal inmates who are being considered for release or parole. Without specifically defining the process which must be afforded a federal prisoner eligible for parole, the Court finds that no violation occurred in this instance.

A central aspect of plaintiff's claim that he was denied due process is his contention that memoranda relied upon

by the Commission, notably a memorandum from Richard L. Thornburgh, Assistant Attorney General, Criminal Division, to Maurice Sigler, Chairman of the Board of Parole (Exh. B to Nardoza affidavit), were not disclosed to him which he was entitled to see under 18 U.S.C. sec. 4208(b)(2).[1] This subsection provides that at least 30 days prior to any parole determination proceedings, the prisoner shall be provided with ''reasonable access to a report or other document to be used by the Commission in making its determination''. See 28 C.F.R. sec. 2.55, 42 Fed. Reg. 39808, 39822 (August 5, 1977).

The earlier enactment did not include this provision. Plaintiff's reliance on section 4208(b)(2) or 28 C.F.R. sec. 2.55 in connection with his claim that he was entitled to view and rebut the Thornburgh memorandum in late 1975 and early 1976 is misplaced, as neither was applicable at that time. 28 C.F.R. sec. 2.57 which applied at that time provided that an inmate was entitled to review reports in his files, subject to several exceptions. The statute and regulations did not require that an inmate be provided a copy of or a summary of the reports or facts relied on by the Commission in reaching its decision.

In August, 1976 and January, 1977, plaintiff apparently complained of the Commission's failure to reveal such information to him before reaching its decision in 1975. (Exh. H, Q to complaint). There is no record of plaintiff's ever having requested such information by submitting a ''Notice of Intention to Review File'' before either of his scheduled 1977 hearings. Plaintiff appears to view 18 U.S.C. sec. 4208(b)(2) and related regulations as imposing an affirmative duty on the Commission to disclose information in advance even if not solicited by an inmate. However, the grant of ''access'' as reasonably interpreted by the Commission does not create a right to receive such information if not formally requested. Nowhere does plaintiff allege that he was misled or kept in ignorance as to the procedure whereby he could submit a notice of his intent to review his file. When plaintiff was scheduled for a special review hearing in December, 1978, specifically to allow him to review the Thornburgh memorandum, he refused to appear (Exhibit L to Nardoza affidavit). These facts remain uncontroverted by plaintiff. There is no basis for a finding that nondisclosure in these circumstances constituted a denial of due process.

As commented in **Bowles v. Tennant, supra,** the majority of the Supreme Court ruled in **Greenholtz v. Nebraska Penal Inmates** that a parole board is not constitutionally required to issue a summary of the evidence supporting its decision to deny parole. 442 U.S. at 14, 20-21. To the extent that due process would require a written statement of reasons for denial of parole, the Notice of Action issued to plaintiff on January 23, 1978 (Exhibit R to complaint) adequately informed plaintiff of the Commission's reasons.[2] Furthermore, the records of the

---

[1] The Thornburgh memorandum recited in substance that plaintiff had a substantial prior criminal record, was known to be associated with organized crime principals in the eastern United States, had "operated as the most active receiver of stolen property in New England", and had violated the conditions of bail in the past. On the basis of this information, Mr. Thornburgh recommended against plaintiff's release on parole.

The memorandum dated November 6, 1975 was received by the Board of Parole after the October, 1975 hearing.

[2] The reasons stated in the Commission's notice appear as follows:

"Your offense behavior has been rated as very high severity because of the multiplicity of offenses and convictions. You have a salient factor score of 8. You have been in custody a total of 82 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 36-45 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and in-

Commission reflect that more than a cursory consideration was given to plaintiff's case, and that a range of information, both favorable and unfavorable, was taken into account. See Hearing Summary of December 8, 1977 (Exh. N to complaint). The fact that plaintiff's institutional adjustment record was favorable was not the sole factor to be considered by the Commission. See, **Albano v. Anderson,** 472 F. Supp. 931, 935 (M.D. Pa. 1979). The Board was entitled to consider the circumstances surrounding plaintiff's criminal conduct and was entitled to use such information in the exercise of its discretion. See, **Billiteri v. United States Board of Parole,** 541 F.2d 938, 944 (2d Cir. 1976). The decisions of the Commission were not so arbitrary or capricious as to amount to a denial of due process rights.

The January 23, 1978 notice states that the Commission's decision was outside the guidelines outlined in the Commission's regulations. As set forth in 18 U.S.C. sec. 4206, included above, a' prisoner is entitled in those circumstances to a written notice stating with particularity the reasons for its determination, including a summary of the information relied upon. It might be argued that the Commission's notice did not comply strictly with the summary requirement of section 4206. However, in view of the Supreme Court's ruling in **Greenholtz, supra,** to the effect that an inmate is not constitutionally entitled to a summary of the evidence relied upon when parole is denied, violation of this statutory provision would not constitute a denial of due process. Moreover, plaintiff refused to attend the hearing at which the Commission sought to rectify any possible omission in its decision, so plaintiff's allegation of noncompliance must be rejected as grounds for granting the relief sought.

For the foregoing reasons, the Court concludes that plaintiff has not been deprived of his rights to due process.

Insofar as Count II should be treated as a petition for writ of habeas corpus whereby plaintiff seeks immediate release from the restraints of parole, the petition is denied. Alternatively, the requested injunctive relief applied for in the civil rights aspect of Court II is denied.

Even if it could be found that plaintiff's due process rights were violated during the relevant time period, monetary damages would not be recoverable against the Parole Commission officials, as they are entitled to at least a qualified immunity, if not absolute immunity, for violating plaintiff's civil rights in the course of deciding whether or not to grant him parole. See, **Sellars v. Procunier,** 641 F.2d 1295, 1301-1302 (9th Cir. 1981) (parole board members entitled to absolute immunity in 42 U.S.C. sec. 1983 actions); **DeShields v. U.S. Parole Commission,** 593 F.2d 354, 356 (8th Cir. 1979) (qualified immunity); **Nebraska Penal Inmates v. Greenholtz,** 436 F. Supp. 432, 437 (D. Neb. 1976), **rev'd on other grds,** 442 U.S. 1 (1979) (quasi-judicial immunity). The Parole Commission cannot be held liable solely under the theory of **respondeat superior. Monell v. Dept. of Social Services,** 436 U.S. 658, 694 (1978). The Nardoza affidavit and supporting exhibits support the defendants' view that they acted in good faith with respect to plaintiff's case. Plaintiff has not presented facts from which an inference of bad faith or malice could be drawn.

Accordingly, summary judgment is hereby granted in favor of the defendants on Count II of the complaint as well as on Count I.

**John J. McNaught**
**United States District Judge**

formation presented, a decision above the guidelines at this consideration appears warranted because your offense behavior consisted of multiple, separate offenses. was part of a large-scale criminal conspiracy, and an unusually sophisticated manner was evident in the commission of the offense."